Christian Contreras (SBN 330269)
E-Mail: CC@Contreras-Law.com
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000

Attorney for Plaintiffs, ESTATE OF
FRANCISCO NUNEZ, et al.

Humberto M. Guizar (SBN 125769)
E-Mail: hguizar@ghclegal.com
**LAW OFFICES OF HUMBERTO GUIZAR**
3500 West Beverly Boulevard
Montebello California 90640
Tel: (323) 725-1151; Fax.: (323) 597 0101

Attorney for Plaintiffs, A.N.1 & A.N.2

Denisse O. Gastélum, (SBN 282771)
E-Mail: dgastelum@gastelumfirm.com
**GASTÉLUM LAW, APC**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622

Attorney for Plaintiffs, F.N. & B.N.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF FRANCISCO NUNEZ by and through his successors in interest; MERCEDES SALINAS DE NUNEZ, individually; FRANCISCO NUNEZ NINO, individually; A.N.1, a minor, by and through their guardian ad litem ADRIANA HERNANDEZ; A.N.2, a minor, by and through their guardian ad litem, ADRIANA HERNANDEZ; F.N., a minor, by and through their guardian VANESSA RODRIGUEZ; B.N., a minor, by and through their guardian VANESSA RODRIGUEZ; ALEXUS ROUGHFACE, individually; MARIANNA NUNEZ, individually;<br><br>          Plaintiffs,<br><br>     v.<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; LOS ANGELES COUNTY, a public entity; LOGAN SIMI, an individual; SHANE QUESADA, an individual; NOEL WITTY, an individual; DOES 1 through 10, individually,<br><br>          Defendants. | **CASE NO.: 2:25-cv-2588**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Excessive Force, Fourth Amendment Violation (42 U.S.C. § 1983);<br>2. Denial of Summon Medical Care, Fourth Amendment Violation (42 U.S.C. § 1983);<br>3. Special Relationship, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>4. State Created Danger, Fourteenth Amendment Violation (42 U.S.C. § 1983;<br>5. Deprivation of Subst. Due Process – Interference with Familial Association (42 U.S.C. §1983);<br>6. Municipal Liability (*Monell*) (42 U.S.C. §1983);<br>7. Negligence;<br>8. Battery;<br>9. Violations of Civil Code Section 52.1 (Tom Bane Act)<br><br>**DEMAND FOR JURY TRIAL** |

1

**INTRODUCTION**

1.     This is a civil rights action concerning the tragic death of FRANCISCO NUNEZ on March 9, 2024. FRANCISCO NUNEZ was merely thirty-eight years old when LOS ANGELES SHERIFF'S DEPARTMENT deputies chased him to an alley where they caused FRANCISCO NUNEZ injuries and left him to die, only to be found at the same location, dead, three (3) days later.

2.     FRANCISCO NUNEZ was a beloved father, brother, son and community member. FRANCISCO NUNEZ leaves behind six (6) children and his parents, Plaintiffs herein. Since FRANCISCO NUNEZ's death, his family has been fighting for justice and not allowing FRANCISCO NUNEZ to die in vain.



3.     On March 9, 2024, FRANCISCO NUNEZ was with friends at a friend's apartment complex 44000 block of Division Street, Lancaster, CA 93535. In the evening, LOS ANGELES SHERIFF'S DEPARTMENT deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, attempted to make a consensual stop of FRANCISCO NUNEZ and the six (6) other individuals he was with.

4.     However, no 911 call had been placed that night regarding FRANCISCO NUNEZ, no report of suspicious activity had been made regarding FRANCISCO NUNEZ, and there were no pleas for help regarding FRANCISCO NUNEZ.

5.     Upon arrival, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY,  and DOES 1-10, inclusive, yelled at the men to leave their car and lay face-down on the hood of Defendant Deputies LOGAN SIMI, SHANE QUESADA,

**COMPLAINT FOR DAMAGES**

1    NOEL WITTY, and DOES 1-10's vehicle.

2        6.    Four (4) individuals, NUNEZ's friends, immediately ran and got away.

3        7.    NUNEZ and the two (2) other individuals also ran. After NUNEZ and the

4    two (2) other individuals ran, Defendants LOGAN SIMI, SHANE QUESADA, NOEL

5    WITTY, and DOES 1-10, engaged in a foot pursuit to attempt to detain NUNEZ and

6    the two (2) other individuals. An independent witness has stated that after Defendants

7    LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, attempted to

8    detain NUNEZ and the two (2) remaining individuals, the deputies stated that they had

9    "two (2) in custody." Thereafter, according to the witness, Defendants LOGAN SIMI,

10   SHANE QUESADA, NOEL WITTY, and DOES 1-10, stated that they have the "third

11   in custody." The two (2) individuals who were in LASD custody were Eric Guzman

12   and Robert Garcia. Therefore, NUNEZ was the "third in custody" given that two (2)

13   were detained and four (4) got away at the inception of the deputies' contact.

14       8.    In fear for his life in an area known for deputy gang violence,

15   FRANCISCO NUNEZ instead ran towards Division Street.

16       9.    Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL

17   WITTY, and DOES 1-10, inclusive, chased FRANCISCO NUNEZ across Division

18   Street into an open field. Defendant Deputies LOGAN SIMI, SHANE QUESADA,

19   NOEL WITTY, and DOES 1-10, inclusive, then contacted and handcuffed

20   FRANCISCO NUNEZ. Upon information and belief, FRANCISCO NUNEZ was last

21   seen alive while in the custody of LOS ANGELES COUNTY SHERIFF'S

22   DEPARTMENT Deputies.

23       10.   Upon information and belief Defendant Deputies LOGAN SIMI, SHANE

24   QUESADA, NOEL WITTY, and DOES 1-10, inclusive, then began attacking

25   FRANCISCO NUNEZ, striking FRANCISCO NUNEZ repeatedly and using their

26   body weight to press FRANCISCO NUNEZ to the ground, leaving FRANCISCO

27   NUNEZ covered in bruises, abrasions, possible burns, and blunt force trauma to the

28   chest and head. Alternatively, the conduct of Defendant Deputies LOGAN SIMI,

SHANE QUESADA, NOEL WITTY, and DOES 1-10 caused FRANCISCO NUNEZ to suffer a medical emergency which Defendants failed to summon medical care for FRANCISCO NUNEZ.

11.    As further alleged herein, the use of force on FRANCISCO NUNEZ was unwarranted and excessive. FRANCISCO NUNEZ was not a threat to anyone and the officers should have never used force on FRANCISCO NUNEZ.

12.    Worst yet, the deputies failed to summon medical care while they had FRANCISCO NUNEZ in their custody. FRANCISCO NUNEZ, who was also asthmatic, began experiencing a medical emergency. FRANCISCO NUNEZ died as a result of Defendant DEPUTIES' attack.

13.    Further adding insult to injury, FRANCISCO NUNEZ's body was moved repeatedly after his death, with his pockets found turned inside out and emptied and his hands, mouth, and pants covered in blood.

14.    Clearly, FRANCISCO NUNEZ suffered severe mental, physical, and emotional distress and anguish in the time leading up to his brutal death.

15.    Accordingly, this civil rights action seeks to vindicate FRANCISCO NUNEZ's tragic death and egregious violation of his constitutional rights, as well as bring justice for the deprivation of Plaintiffs MERCEDES SALINAS DE NUNEZ and FRANCISCO NUNEZ NINO's beloved son and Plaintiffs A.N.1, A.N.2, F.N., B.N., ALEXUS ROUGHFACE, and MARIANNA NUNEZ's beloved father, FRANCISCO NUNEZ.

## JURISDICTION AND VENUE

16.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

17.    Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## PENDANT CLAIMS

18.     Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law. On August 2, 2024, Plaintiffs presented a tort claim to Defendant COUNTY. On September 19, 2024, Defendant COUNTY rejected the tort claim. On September 24, 2024, Defendant COUNTY mailed the notices of rejection to Plaintiffs' counsel. Accordingly Plaintiffs timely presented tort claims and complied with the Tort Claims Act.

19.     With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

### A. Plaintiffs

20.     Decedent FRANCISCO NUNEZ (hereinafter also "NUNEZ"), was a 38-year-old man who was, at all times relevant hereto, a resident of the State of California and County of LOS ANGELES. The claims made by Plaintiff FRANCISCO NUNEZ, are brought by his successors in interest, MERCEDES SALINAS DE NUNEZ.

21.     Plaintiff MERCEDES SALINAS DE NUNEZ, is and was, at all times relevant hereto, the natural mother of decedent FRANCISCO NUNEZ, and at all times relevant hereto was a resident of the County of LOS ANGELES, California. Plaintiff MERCEDES SALINAS DE NUNEZ, as successor in interest, brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.,* which provide for survival and wrongful death actions. Plaintiff MERCEDES SALINAS DE NUNEZ also brings her claims individually and on behalf of decedent FRANCISCO NUNEZ on the basis of 42 U.S.C. § 1983, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

///

**COMPLAINT FOR DAMAGES**

22.    Plaintiff FRANCISCO NUNEZ NINO, is and was, at all times relevant hereto, the natural father of decedent FRANCISCO NUNEZ, and at all times relevant hereto was a resident of the County of LOS ANGELES, California. Plaintiff FRANCISCO NUNEZ NINO, as successor in interest, brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.,* which provide for survival and wrongful death actions. Plaintiff FRANCISCO NUNEZ NINO also brings his claims individually and on behalf of decedent FRANCISCO NUNEZ on the basis of 42 U.S.C. § 1983, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

23.    Plaintiff A.N.1, is and was, at all times relevant hereto, the natural child of decedent FRANCISCO NUNEZ, and at all times relevant hereto was a resident of the County of LOS ANGELES, California. Plaintiff A.N.1, as successor in interest by and through guardian ad litem ADRIANA HERNANDEZ, brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.,* which provide for survival and wrongful death actions. Plaintiff A.N.1 also brings their claims individually and on behalf of decedent FRANCISCO NUNEZ on the basis of 42 U.S.C. § 1983, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only their rights, but others' civil rights of great importance.

24.    Plaintiff A.N.2, is and was, at all times relevant hereto, the natural child of decedent FRANCISCO NUNEZ, and at all times relevant hereto was a resident of the County of LOS ANGELES, California. Plaintiff A.N.2, as successor in interest by and through guardian ad litem ADRIANA HERNANDEZ, brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.,* which provide for survival and wrongful death actions. Plaintiff A.N.2 also brings their claims individually and on behalf of decedent FRANCISCO NUNEZ on the basis of 42 U.S.C. § 1983, the United States Constitution, federal and state civil rights law and

1  California law. Plaintiff also brings these claims as a Private Attorney General, to

2  vindicate not only their rights, but others' civil rights of great importance.

3       25.     Plaintiff F.N., is and was, at all times relevant hereto, the natural child of

4  decedent FRANCISCO NUNEZ, and at all times relevant hereto was a resident of the

5  County of LOS ANGELES, California. Plaintiff F.N., as successor in interest by and

6  through guardian ad litem VANESSA RODRIGUEZ, brings these claims pursuant to

7  California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.,* which provide

8  for survival and wrongful death actions. Plaintiff F.N. also brings their claims

9  individually and on behalf of decedent FRANCISCO NUNEZ on the basis of 42 U.S.C.

10  § 1983, the United States Constitution, federal and state civil rights law and California

11  law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not

12  only their rights, but others' civil rights of great importance.

13       26.     Plaintiff B.N., is and was, at all times relevant hereto, the natural child of

14  decedent FRANCISCO NUNEZ, and at all times relevant hereto was a resident of the

15  County of LOS ANGELES, California. Plaintiff B.N., as successor in interest by and

16  through guardian ad litem VANESSA RODRIGUEZ, brings these claims pursuant to

17  California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.,* which provide

18  for survival and wrongful death actions. Plaintiff B.N. also brings their claims

19  individually and on behalf of decedent FRANCISCO NUNEZ on the basis of 42 U.S.C.

20  § 1983, the United States Constitution, federal and state civil rights law and California

21  law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not

22  only their rights, but others' civil rights of great importance.

23       27.     Plaintiff ALEXUS ROUGHFACE, is and was, at all times relevant hereto,

24  the stepchild of decedent FRANCISCO NUNEZ, and at all times relevant hereto was

25  a resident of the County of LOS ANGELES, California. Plaintiff ALEXUS

26  ROUGHFACE, as successor in interest, brings these claims pursuant to California

27  Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.,* which provide for

28  survival and wrongful death actions. Plaintiff ALEXUS ROUGHFACE also brings her

claims individually and on behalf of decedent FRANCISCO NUNEZ on the basis of 42 U.S.C. § 1983, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

28.    Plaintiff MARIANNA NUNEZ, is and was, at all times relevant hereto, the natural child of decedent FRANCISCO NUNEZ, and at all times relevant hereto was a resident of the County of LOS ANGELES, California. Plaintiff MARIANNA NUNEZ as successor in interest, brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.,* which provide for survival and wrongful death actions. Plaintiff MARIANNA NUNEZ also brings her claims individually and on behalf of decedent FRANCISCO NUNEZ on the basis of 42 U.S.C. § 1983, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

**B. Defendants**

29.    Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter also "LASD") is a public entity with the capacity to sue and be sued[1]. At all times relevant to the facts alleged herein, under contract with the County of LOS ANGELES, Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT was responsible for law enforcement services in the County of LOS ANGELES and City of Lancaster.

30.    Defendant COUNTY OF LOS ANGELES (hereinafter also "COUNTY") is a public entity with the capacity to sue and be sued. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions,

---

[1] The Ninth Circuit has held that California law permits § 1983 claims against municipal police departments. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.).

**COMPLAINT FOR DAMAGES**

1  omissions, policies, procedures, practices and customs of its employees complied with

2  the laws and the Constitutions of the United States and of the State of California.

3      31.    Defendant LOGAN SIMI (hereinafter also "SIMI") is and was at all

4  relevant times an individual employed as a deputy of Defendant LOS ANGELES

5  COUNTY SHERIFF'S DEPARTMENT, acting within color of law and within the

6  course and scope of such employment.

7      32.    Defendant SHANE QUESADA (hereinafter also "QUESADA") is and

8  was at all relevant times an individual employed as a deputy of Defendant LOS

9  ANGELES COUNTY SHERIFF'S DEPARTMENT, acting within color of law and

10  within the course and scope of such employment.

11      33.    Defendants DOE 1-10 LOS ANGELES COUNTY SHERIFF'S

12  DEPARTMENT DEPUTIES, at all times mentioned herein, were employees of the

13  COUNTY. Defendants DOE 1-10 LOS ANGELES COUNTY SHERIFF'S

14  DEPARTMENT DEPUTIES are being sued individually and in their capacities as

15  COUNTY employees. At all relevant times, Defendants DOES 1-10, inclusive, were

16  acting under color of state law.

17      34.    Plaintiff is currently ignorant of the true names and capacities of

18  Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants

19  by such fictitious names. Plaintiffs are informed and believe and thereon allege that each

20  Defendant so named is responsible in some manner for the injuries and damages

21  sustained by Plaintiff as set forth herein. Plaintiff will amend the complaint to state the

22  names and capacities of each DOE Defendant when they have been ascertained.

23  Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a

24  resident of California.

25      35.    Each of the defendants, including the DOE defendants, caused, and is

26  responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by,

27  among other things, personally participating in the unlawful conduct, acting jointly, or

28  conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting

9

**COMPLAINT FOR DAMAGES**

1  in motion policies, plans, or actions that led to the unlawful conduct, by failing to take
2  action to prevent the unlawful conduct; by failing and refusing to initiate and maintain
3  adequate training and supervision; by failing to enact policies to address the
4  constitutional rights of protesters despite the obvious need for such a policy; and by
5  ratifying the unlawful conduct that occurred by agents and officers under their direction
6  and control, including failing to take remedial or disciplinary action.

7      36.    Plaintiffs are informed and believe and thereon allege that each of the
8  Defendants was at all material times an agent, servant, employee, partner, joint venturer,
9  co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things
10  herein alleged, was acting within the course and scope of that relationship. Plaintiffs are
11  further informed and believe and thereon allege that each of the Defendants herein gave
12  consent, aid, and assistance to each of the remaining Defendants, and ratified and/or
13  authorized the acts or omissions of each Defendant as alleged herein, except as may be
14  hereinafter specifically alleged. At all material times, each Defendant was jointly
15  engaged in tortious activity and an integral participant in the conduct described herein,
16  resulting in the deprivation of Plaintiffs' and decedent's constitutional rights and other
17  harm.

18      37.    In doing each of the acts and/or omissions alleged herein, Defendants, and
19  each of them, acted under color of authority and/or under the color of law.

20  **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

21      38.    FRANCISCO NUNEZ was thirty-eight (38) years old at the time of his
22  death. NUNEZ lived with his family in Lancaster, California, where he had lived for
23  many years. On March 9, 2024, LOS ANGELES SHERIFF'S DEPARTMENT
24  Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10,
25  inclusive, chased him to an alley where they would cause FRANCISCO NUNEZ's
26  death.

27  ///
28  ///

**COMPLAINT FOR DAMAGES**

39.     In the early morning of March 9, 2024, FRANCISCO NUNEZ was hanging out with six (6) friends at a friend's apartment complex. With the inclusion of FRANCISCO NUNEZ, NUNEZ was part of a group of seven (7) men.

40.     While NUNEZ was lawfully present at the apartment complex, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, were driving through and decided to conduct a consensual stop.

41.     There were no 911 calls, reports of criminal activity, or requests for help regarding FRANCISCO NUNEZ. There was no reason to stop NUNEZ for simply spending time with friends.

42.     Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, yelled at the men to leave their car and lay face-down on the hood of the DEPUTIES' vehicle.

43.     Four (4) individuals, NUNEZ's friends, immediately ran and got away.

44.     NUNEZ and the two (2) other individuals also ran. After NUNEZ and the two (2) other individuals ran, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, engaged in a foot pursuit to attempt to detain NUNEZ and the two (2) other individuals. An independent witness has stated that after Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, attempted to detain NUNEZ and the two (2) remaining individuals, the deputies stated that they had "two (2) in custody." Thereafter, according to the witness, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, stated that they have the "third in custody." The two (2) individuals who were in LASD custody were Eric Guzman and Robert Garcia. Therefore, NUNEZ was the "third in custody" given that two (2) were detained and four (4) got away at the inception of the deputies' contact.

45.     Upon information and belief, FRANCISCO NUNEZ was chased by Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, across Division Street into an open field.

///

**COMPLAINT FOR DAMAGES**

46.     FRANCISCO NUNEZ was last seen alive when Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, made contact with NUNEZ.

47.     FRANCISCO NUNEZ was then apprehended by Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, who then handcuffed him, as demonstrated by the abrasions and bruising on his wrists in the form of handcuff marks. Autopsy photographs taken of FRANCISCO NUNEZ confirm that FRANCISCO NUNEZ had handcuff abrasions on both of his wrists.

48.     Unsatisfied with simply apprehending FRANCISCO NUNEZ, upon information and belief, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10,  then began a brutal assault on the helpless and restrained NUNEZ. After placing NUNEZ in their custody, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, began to use physical force on NUNEZ by physically striking him or using their body weight to press NUNEZ to the ground, leading to bruises, abrasions, and blunt force trauma to NUNEZ's chest and head which were confirmed by an autopsy.

49.     At the very least, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, failed to summon medical care for NUNEZ was NUNEZ was in clear medical distress. In fact, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, dumped NUNEZ's body near the apartment complex where the foot pursuit commenced.

50.     Eventually, on March 14, 2024, FRANCISCO NUNEZ's body was noticed by a passerby who had seen NUNEZ lying next to a garage a mere 250 feet from where NUNEZ was first contacted by Defendant DEPUTIES. The passerby reported that he had first seen NUNEZ lying there three days prior, on March 11, 2024.

51.     Despite FRANCISCO NUNEZ having lain in the same spot for three days, NUNEZ's body bore signs of having been moved no fewer than twice after his death. Between March 9, 2024, and March 11, 2024, Defendant DEPUTIES tampered with

NUNEZ's body in a bid to hide the results of their attack on NUNEZ. Blood was on NUNEZ's body, in NUNEZ's mouth, and on the ground around NUNEZ's body. Adding insult to injury, NUNEZ's pockets had been emptied and turned inside out.

52.     Clearly, FRANCISCO NUNEZ died due to the force used by Defendant DEPUTIES and their failure to summon medical care.

53.     Unfortunately, FRANCISCO NUNEZ suffered significantly prior to his death. NUNEZ's body bore numerous bruises, abrasions, and even possible burn marks that indicate a protracted and painful death. NUNEZ also had blood on his hands and pants, bruising and abrasions on his knuckles and wrists, and blood welling in his mouth.

## FIRST CLAIM FOR RELIEF

**Excessive Force, Fourth Amendment Violation**

**(42 U.S.C. § 1983)**

**(By Plaintiff ESTATE OF FRANCISCO NUNEZ as Against LOGAN SIMI, SHANE QUESADA, NOEL WITTY,  and DOES 1-10)**

54.     Plaintiffs reallege and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

55.     Plaintiffs allege that Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, used excessive force against FRANCISCO NUNEZ, which deprived him of his right to be secure in their person against unreasonable searches and seizures as guaranteed to NUNEZ under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

56.     The touchstone of the Fourth Amendment is reasonableness and the force used on FRANCISCO NUNEZ was fundamentally unreasonable and in violation of their Fourth Amendment right to be secure in their person against unreasonable searches and seizures.

///

**COMPLAINT FOR DAMAGES**

57.   At all relevant times, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, were LASD deputies who were acting under color of law.

58.   In fact, on March 9, 2024, Defendants Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, acting in their individual and/or representative capacities, in the course and scope of their employment with LASD, respectively, acting under color of law, used unreasonable and excessive force and violated the constitutional rights of FRANCISCO NUNEZ when they used more force than necessary under the circumstances.

59.   The contact between Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, began as a non-violent and unsolicited pedestrian stop. There were no 911 calls by anyone to bring Defendants to the site of the stop or any allegations of violent or threatening behavior. Plaintiff FRANCISCO NUNEZ was not armed and did attempt to confront, threaten, or fight Defendants. Indeed, NUNEZ was running in fear for his life the last time he was seen alive. Clearly, the governmental interest in this instance was non-existent.

60.   When Defendants Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, used physical force on FRANCISCO NUNEZ substantial enough to leave bruises and burn marks, NUNEZ did not present a threat to the deputies.

61.   In fact, FRANCISCO NUNEZ's body was found with deep bruising consistent with handcuff usage on his wrists. This means that NUNEZ was restrained and helpless at the time that Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, chose to beat him to death mere feet from where they first encountered him.

62.   Therefore, the force used by Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, was objectively unreasonable and therefore in violation of the Fourth Amendment.

**COMPLAINT FOR DAMAGES**

63. Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, caused the death of FRANCISCO NUNEZ.

64. By virtue of their misconduct, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, are liable for FRANCISCO NUNEZ's tragic death.

65. Accordingly, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, violated Plaintiffs' Fourth Amendment rights and are liable for all damages recoverable under 42 U.S.C. Section 1983.

66. Further, FRANCISCO NUNEZ experienced physical pain, severe emotional distress, and mental anguish prior to his death, as well as loss of his life and other damages alleged herein.

67. Plaintiffs by this action, further claims all of Plaintiff's attorneys' fees and costs incurred and to be incurred in Plaintiffs presenting, maintaining and prosecuting this action under 42 U.S.C. Section 1988.

68. The conduct of Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of FRANCISCO NUNEZ and therefore warrants the imposition of exemplary and punitive damages as to Defendant DEPUTIES.

## SECOND CLAIM FOR RELIEF

### Denial of Medical Care, Fourth Amendment Violation

### (42 U.S.C. § 1983)

### (By Plaintiff ESTATE OF FRANCISCO NUNEZ as Against LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10)

69. Plaintiffs reallege and incorporate herein by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth therein.

70. Claims for the denial of medical assistance after an arrest are analyzed under the Fourth Amendment. *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090,

1    1098 (9th Cir. 2006). Officers must provide objectively reasonable post-arrest care to

2    an apprehended suspect. *Id.* "Due process requires that police officers seek the

3    necessary medical attention for a detainee when he or she has been injured while being

4    apprehended by either promptly summoning the necessary medical help or by taking

5    the injured detainee to a hospital." *Tatum v. City and CITY of San Francisco* (9th Cir.

6    2006) 441 F.3d 1090, 1099 (citing *Graham v. Connor,* 409 U.S. 386 (1989). 441 F.3d

7    at 1098).

8    71.    On March 9, 2024, after it was clear that FRANCISCO NUNEZ needed

9    medical care, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and

10   DOES 1-10, inclusive, denied or failed to summon medical care.

11   72.    Upon information and belief, on March 9, 2024, Defendants LOGAN

12   SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, caused

13   NUNEZ to suffer a medical emergency while he was in their custody. NUNEZ suffered

14   a medical emergency because upon information and belief, Defendants LOGAN SIMI,

15   SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, used excessive force

16   on NUNEZ. Given that NUNEZ was subjected to excessive force, he suffered. A

17   medical emergency. Indeed, NUNEZ's body suffered blunt force trauma as reflected

18   by the medical examination conducted after his death. Clearly, NUNEZ needed

19   medical care.

20   73.    Despite NUNEZ's medical needs Defendants LOGAN SIMI, SHANE

21   QUESADA, NOEL WITTY, and DOES 1-10, denied and failed to summon medical

22   care for NUNEZ in violation of the Fourth Amendment. Defendants LOGAN SIMI,

23   SHANE QUESADA, NOEL WITTY, and DOES 1-10, should have taken NUNEZ to

24   a hospital to address his medical issues.

25   74.    Instead, Defendants LOGAN SIMI, SHANE QUESADA, NOEL

26   WITTY, and DOES 1-10, left NUNEZ to die in an empty lot where he was found three

27   (3) days later after the use of force.

28   ///

**COMPLAINT FOR DAMAGES**

75.     Therefore, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, caused the death of NUNEZ because they denied and failed to summon medical care when it was obvious that NUNEZ needed medical care. By virtue of their misconduct, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, are liable for NUNEZ's tragic death because these Defendants were integral participants in the failure to summon medical care, or because they failed to intervene to prevent these violations.

76.     Accordingly, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10,, are liable for all damages recoverable under 42 U.S.C. Section 1983.

77.     The ESTATE OF FRANCISCO NUNEZ by this action, further claims all of Plaintiff's attorneys' fees and costs incurred and to be incurred in Plaintiff presenting, maintaining and prosecuting this action under 42 U.S.C. Section 1988.

78.     The conduct of Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10,, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of NUNEZ and therefore warrants the imposition of exemplary and punitive damages as to Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10,.

**THIRD CLAIM FOR RELIEF**

**Special Relationship,**

**Fourteenth Amendment Violation**

**(42 U.S.C. § 1983)**

**(By Plaintiff ESTATE OF FRANCISCO NUNEZ as Against LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10)**

79.     Plaintiffs reallege and incorporate herein by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth therein.

80.     When a special relationship exists between a person and the state, the special-relationship exception to the Fourteenth Amendment applies. *Murguia v.*

**COMPLAINT FOR DAMAGES**

*Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023). The special-relationship exception "applies when [the] state 'takes a person into its custody and holds him there against his will.'" *Id.* (citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011)). "When a person is placed in these types of custody, we allow due process claims against the state for a fairly simple reason: a state cannot restrain a person's liberty without also assuming some responsibility for the person's safety and well-being." *Id.*

81.    At all relevant times, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, were LOS ANGELES COUNTY SHERIFF'S DEPARTMENT deputies who were acting under color of law.

82.    Upon information and belief, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, while acting under color of law, placed FRANCISCO NUNEZ in custody when they initially arrived at the scene of the stop.

83.    When Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, placed FRANCISCO NUNEZ in custody, NUNEZ was restrained of his liberty.

84.    Further, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, physically restrained FRANCISCO NUNEZ by handcuffing NUNEZ and may have used other physical force including restrictive holds and blunt force.

85.    Due to LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, restraint on FRANCISCO NUNEZ's liberty and failure to preserve his safety and well-being, NUNEZ was severely injured in his encounter with LASD. NUNEZ bore numerous injuries all over his back, chest, arms, lower legs, and face. These injuries were severe to the point of death on an otherwise healthy thirty-eight-year-old man. NUNEZ died of his injuries at some point within the subsequent five days before his body was found. Clearly, NUNEZ died due to the force used by the deputies and their failure to summon medical care.

86.    As a direct and proximate result of Defendant's conduct, the civil rights of FRANCISCO NUNEZ, as protected by the Fourteenth Amendment of the United States Constitution, were violated and he suffered severe bodily injuries. Further, prior to his death, NUNEZ experienced physical pain, severe emotional distress, and mental anguish, and other damages alleged herein.

87.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, FRANCISCO NUNEZ sustained injuries and damages, including death.

88.    Further, FRANCISCO NUNEZ experienced physical pain, severe emotional distress, and mental anguish prior to his death, as well as loss of his life and other damages alleged herein.

89.    Plaintiff ESTATE OF FRANCISCO NUNEZ by this action, further claims all of Plaintiff's attorneys' fees and costs incurred and to be incurred in Plaintiff presenting, maintaining, and prosecuting this action under 42 U.S.C. Section 1988.

90.    The conduct of Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of FRANCISCO NUNEZ, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, only.

## FOURTH CLAIM FOR RELIEF

### State Created Danger -

### Fourteenth Amendment Violation

### (42 U.S.C. § 1983)

**(By Plaintiff ESTATE OF FRANCISCO NUNEZ As Against Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive)**

84.    Plaintiffs reallege and incorporate herein by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth therein.

85.    Under the state-created danger rule, state actors may be held liable under § 1983 where (1) "'affirmative conduct on the part of a state actor places a plaintiff in danger,'" and (2) the state actor "acts with 'deliberate indifference' to a 'known or obvious danger'" to the plaintiff's safety. *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (quoting *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011)).

86.    Upon information and belief, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, while acting under color of law, affirmatively created or exposed FRANCISCO NUNEZ to the danger of death or serious bodily injury by brutally assaulting NUNEZ while in LASD custody.

87.    Indeed, it was the affirmative conduct and actions of Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, which created or exposed FRANCISCO NUNEZ to the danger of death or serious bodily injury given that Defendant DEPUTIES chased NUNEZ with the intention of placing him in their custody, then contacted and handcuffed NUNEZ before assaulting NUNEZ with unknown force and objects sufficient to leave bruises, abrasions, and possible burns.

88.    Upon information and belief, the affirmative conduct of Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, allowed for the vile beating and subsequent death of FRANCISCO NUNEZ. Indeed, upon information and belief, but for the affirmative conduct of Defendant DEPUTIES, NUNEZ would have never been exposed to death or serious bodily injury.

89.    Given that Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, chased FRANCISCO NUNEZ, handcuffed him, and viciously beat him, it was foreseeable that NUNEZ would suffer death or serious bodily injury.

90.    Furthermore, upon information and belief, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, were

1  deliberately indifferent to the danger NUNEZ faced and was exposed to. In fact,

2  Defendant DEPUTIES created those dangers and forced them upon NUNEZ in a

3  shocking violation of their duty as LASD deputies.

4      91.    As a direct and proximate result of Defendants' conduct, the civil rights

5  of FRANCISCO NUNEZ as protected by the Fourteenth Amendment of the United

6  States Constitution were violated and he suffered serious bodily injury and death.

7  NUNEZ suffered the loss of his life and experienced physical pain, severe emotional

8  distress, and mental anguish prior to his death.

9      92.    Defendants subjected FRANCISCO NUNEZ to their wrongful conduct,

10  depriving NUNEZ of rights described herein, knowingly, maliciously, and with

11  conscious and reckless disregard for whether the rights and safety of NUNEZ and

12  others would be violated by their acts and/or omissions. The conduct of Defendants

13  entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983

14  and as provided by law. Plaintiff does not seek punitive damages against the public

15  entity Defendants.

16      93.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42

17  U.S.C. § 1988, and other applicable United States and California codes and laws.\

18  **FIFTH CLAIM FOR RELIEF**

19  **Deprivation of Substantive Due Process in Violation of the Fourteenth**

20  **Amendment—Interference with Familial Association**

21  **(By Plaintiff, individually, As Against Defendants LOGAN SIMI, SHANE**

22  **QUESADA, NOEL WITTY, and DOES 1-10, inclusive)**

23      94.    Plaintiffs reallege and incorporate herein by reference each of the forgoing

24  paragraphs of this Complaint with the same force and effect as if fully set forth therein.

25      95.    The aforementioned acts and/or omissions of Defendants in being

26  deliberately indifferent to FRANCISCO NUNEZ's serious medical needs, health, and

27  safety, in violation of NUNEZ's constitutional rights, as well as Defendants' failure to

28  train, supervise, and/or take other appropriate measures to prevent the acts and/or

21

1  omissions that caused the untimely and wrongful death of NUNEZ, deprived Plaintiffs

2  of their parent-child relationships with NUNEZ in violation of their substantive due

3  process rights under the First and Fourteenth Amendments to the United States

4  Constitution, as both Amendments protect familial association against unwarranted

5  government interference.

6       96.    As a direct and proximate result of the aforementioned acts and/or

7  omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein

8  including the loss of love, economic support, companionship, comfort, care assistance,

9  protection, affection, society, moral support, training, guidance and gifts of

10  FRANCISCO NUNEZ, as well as the costs of funeral and burial services incurred.

11       97.    The aforementioned acts and/or omissions of LOS ANGELES COUNTY

12  SHERIFF'S DEPARTMENT, COUNTY OF LOS ANGELES, Defendant Deputies

13  LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, were

14  willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary

15  and punitive damages to punish the wrongful conduct alleged herein and to deter such

16  conduct in the future.

17       98.    Plaintiffs have sustained a loss of interest on the value of all damages from

18  the date they were incurred to the present and said loss will continue into the future.

19  **SIXTH CLAIM FOR RELIEF**

20  **Municipal Liability**

21  **(*Monell* - 42 U.S.C. § 1983)**

22  **(By All Plaintiffs as Against as Against All Defendants Save LASD)**

23       99.    Plaintiffs reallege and incorporate herein by reference each of the forgoing

24  paragraphs of this Complaint with same force and effect as if fully set forth herein.

25       100.    Pursuant to *Monell v. Department of Social Servs.*, municipalities are

26  "persons" under § 1983 and thus could be held liable for causing a constitutional

27  deprivation. 436 U.S. 658, 690 (1978). The Supreme Court explained that while a

28  municipality may not be held liable under § 1983 for the torts of its employees on a

theory of *respondent superior*, liability may attach where the municipality itself causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691.

101. Furthermore, "the inadequacy of police training may serve as the basis for § 1983 liability inly when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. County  of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

102. As set forth in the forgoing causes of action, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, and each of them, committed clear and well-established violations of constitutional rights against Plaintiffs. within the course and scope of their employment as LASD deputies, under color of law.

103. On and for some time prior to March 9, 2024 (and continuing to the present date), Defendants COUNTY, LASD and DOES 6-10, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs, and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

    a. Allowing LASD deputies, including Defendants herein, to be members of deputy gangs;

    b. Allowing LASD deputies, including Defendants herein, to use force on individuals such as FRANCISCO NUNEZ;

    c. Allowing LASD deputies, including Defendants herein, to deny medical care to individuals such as FRANCISCO NUNEZ

    d. Allowing LASD deputies to wield their authority to detain and/or arrest civilians arbitrarily and capriciously, seizing civilians out of personal spite or disdain;

e.  Employing and retaining LASD deputies and other personnel, including Defendants herein, whom the Defendants COUNTY and LASD knew or reasonably should have discovered to have a high propensity for abusing their authority, mistreating civilians, and failing to follow established agency policies respecting the rights of the public and interactions with civilians;

f.  Inadequately hiring, training, supervising, assigning, retaining, and disciplining LASD employees, including Defendants herein, whom the Defendants COUNTY and LASD knew or reasonably should have known to be perpetrators of unlawful and/or unconstitutional conduct, allowing such misconduct to go partially or totally unaddressed;

g.  Maintaining grossly inadequate procedures for reporting, investigating, overseeing, disciplining, and correcting intentional misconduct by LASD employees, including Defendants herein;

h.  Consistently ratifying the intentional misconduct of LASD employees in public statements and/or subsequent internal "investigations," thereby cultivating a sense of official impunity within the LASD encouraging of misconduct;

i.  Encouraging, accommodating, or facilitating a "code of silence" among LASD employees, including Defendants herein, pursuant to which false reports are generated and abuses of power are routinely covered up;

j.  Transferring, moving, and/or relocating problem deputies to other stations, divisions, positions, and/or to other local municipal agencies altogether, to essentially "bury," ignore, dilute, hide, spread, etc., these problem actors, along with their incidents of misconduct, evading internal, disciplinary, and other investigations in the process;

k.  Allowing mistreatment of suspects, arrestees, detainees, and inmates in custody, to allow deputies to pursue membership and/or status in one of

**COMPLAINT FOR DAMAGES**

the various gang-like, renegade cliques that exist within the LASD, as well as participating in and/or perpetuating the acknowledgement, allure, and attainment of such membership and notoriety;

l. Allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to insulate law enforcement from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of authority within law enforcement, among various other abuses of power and breaches of duty not expressly specified herein.

104. The expressly adopted policies and/or widespread, well-known, and longstanding customs or practices set forth above, constitute standard operating procedures within the Defendants COUNTY and LASD, which have directly precipitated the pervasive use of unreasonable and/or excessive force against innocent members of the publics, suspects, arrestees, detainees, prisoners, and the general public at an unignorable and unacceptable scale, not least of which resemble the egregious constitutional violations suffered by Plaintiffs.

105. In terms of widespread, well-known, and longstanding customs or practices set forth above, such policies, customs and practices were of significant duration, frequency and extent such that they were standard operating procedure for Defendants LASD and COUNTY. In fact, in 2018, a plumber found the decomposing body of Raymundo Rivera inside a pillar at a Winco supermarket in Lancaster. At the time, Los Angeles County Sheriff's Department officials said the 35-year-old appeared to have fled during a traffic stop and may have "gotten inside there and gotten down to try and hide from the deputies and then couldn't get out." Former LASD Deputy Aaron Tanner later boasted that he and other deputies had chased Rivera — and that they knew he'd fallen into the pillar. Instead of trying to save him, "the deputies left him

there to die, and made false reports that they lost track of the suspect in the pursuit." Former LASD Deputy Aaron admitted that the deputy gang, the Rattlesnakes, effectively controls the Lancaster Sheriff's Station and that its members intimidate other deputies, make false arrests and frame people. In 2021, the RAND Corporation published a 230 page report entitled  Understanding Subgroups Within the Los Angeles County Sheriff's Department[2] where it referred to the Rattlesnakes as one of a few tattooed groups which has flown under the radar. Also in 2021, a 54-page report written by researchers at Loyola Law School described the group as "a deputy gang operating out of the Palmdale and Lancaster stations in the Antelope Valley." The Rattlesnakes' tattoo is described as a skull and a snake. The Rattlesnakes have been documented to exists since at least 2013. In 2013, the United States Department of Justice issued a report to the LASD describing the Rattlesnakes operating out of Antelope Valley.[3] "Some Antelope Valley deputies wear tattoos or share paraphernalia with an intimidating skull and snake symbol as a mark of their affiliation with the Antelope Valley stations," the report said. "Though there are varying interpretations of what these tattoos symbolize, they provide an undeniable visual representation of the gulf between deputies and the community and are an unfortunate reminder of LASD's history of symbols associated with problematic deputy behavior." Federal authorities noted in their report that the images were still "widely visible throughout the Antelope Valley." The report encouraged the Sheriff's Department to take stronger measures to get deputies to stop displaying such "divisive" insignia. Following the report, in 2015 the county entered into a settlement agreement with the federal government, promising to correct some of the policing problems authorities had identified. The settlement

[2] Link to report: https://assets-us-01.kc-usercontent.com/0234f496-d2b7-00b6-17a4-b43e949b70a2/d86c01b3-abea-4285-afaf-6efbd7ceca7a/RR-A616-1_9-15-21.pdf

[3] Link to June 28, 2023 US Department of Justice Investigation into Deputy Gangs, https://www.justice.gov/sites/default/files/crt/legacy/2013/06/28/antelope_findings_6-28-13.pdf

**COMPLAINT FOR DAMAGES**

agreement is further described below.

106.    Upon information and belief, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, are either members, associates or affiliated with the Rattlesnakes. Given the widespread and longstanding custom and practice of deputy gangs, such unconstitutional custom and practice caused the death of FRANCISCO NUNEZ. Indeed, deputy gang members are encouraged to carry out unlawful acts. Tragically, FRANCISCO NUNEZ met the same fate as  Raymundo Rivera in 2018. However, the Rattlesnakes have been in operation as early as 2013 and further confirmed to commit constitutional violations by the United Stated Department of Justice as shown in the 2015 Settlement Agreement entered into by the DOJ and LASD. The Settlement Agreement can be found at the following link: https://lasd.org/pdf/SettlementAgreement.pdf.

107.    Furthermore, a practice or custom can be established by repeated constitutional violations that were not properly investigated and for which the violators were not disciplined, reprimanded or punished. Upon information and belief, the individual defendants herein and other deputies within the Antelope Valley sheriff's stations were not disciplined, reprimanded or punished for constitutional violations. In fact, in August 2011, the US Department of Justice (DOJ), Civil Rights Division, launched an investigation of the Los Angeles County Sheriff's Department (LASD) in response to complaints and allegations of civil rights violations in the Antelope Valley. In June of 2013, the DOJ investigation found that LASD deputies in the Antelope Valley had violated the Constitution, including by conducting discriminatory and illegal searches and seizures primarily affecting Black residents. The investigation resulted in a Settlement Agreement (hereinafter the "SA") that mandated a batch of reforms, as well as periodic monitoring reports by the Antelope Valley Monitoring Team.

108.    While this case does not specifically concern the implementation of the SA, in 2022, the Antelope Valley Monitoring Team issued its 15th Semi-Annual

**COMPLAINT FOR DAMAGES**

Report. In the 15th Semi-Annual Report, the Antelope Valley Monitoring Team stated that in 2020, the Antelope Valley Monitoring Team sent correspondence to VILLANUEVA and to Judge John F. Walter (judge overseeing the settlement) to draw attention to several crucial SA requirements still unfinished and to the lack of sufficient LASD leadership regarding the implementation of the SA, which the Antelope Valley Monitoring Team found to be the main cause of lack if implementation of the terms of the SA. Two years later, in the Antelope Valley Monitoring Team's July 2022 report, the Antelope Valley Monitoring Team documented that progress had continued to stall or backslide and that those crucial tasks were still not completed. The Monitors' frustrations with the delays were at an all-time high, compelling the Antelope Valley Monitoring Team to request that DOJ, LASD, and the COUNTY seek judicial involvement to address the systemic issues in the Antelope Valley. Faced with a Department and County that were unsupportive if not outright resistant to the reforms outlined in the SA, and a void of leadership willing or able to prioritize the SA, the Monitors felt that judicial involvement was necessary to motivate LASD to implement the SA. the Antelope Valley Monitoring Team cited the following factors, among other issues, as critical failures by LASD and the COUNTY with the implementation of the SA. 1. Lack of leadership and executive involvement. 2. Lack of attempts to undertake or prioritize required SA-related work. 3. Lack of urgency. 4. Insufficient resources allocated to the SA-related work. 5. Insufficient use of data and a lack of a culture of transparency. 6. Lack of progress on LASD internal audits.[4] Accordingly, the SA and the failure to implement the SA show how constitutional violations are standard procedures in the Antelope Valley and that COUNTY and LASD has failed to train its deputies.

---

[4] A link to the Antelope Valley Monitoring Team issued its 15th Semi-Annual Report can be found in the following link:
http://www.antelopevalleysettlementmonitoring.info/content/documents/reports/15%20Semi-Annual%20Report,%20December%202022.pdf

**COMPLAINT FOR DAMAGES**

109. Defendants COUNTY and LASD, and individual supervisory officials thereof, whether named or unnamed, had either actual or constructive knowledge of the unconstitutional policies, practices, and/or customs set forth herein. Despite this knowledge, the Defendants COUNTY and LASD, by and through officials with final policymaking authority, did condone, tolerate, and ratify such policies, customs, and practices, and have shown deliberate indifference to the foreseeable effects and consequences of these policies, customs, and practices with respect to the civil rights and wellbeing of the present Plaintiffs, other individuals similarly situated, and the general public.

110. Accordingly, the policies, practices, and/or customs implemented, maintained, or still tolerated by Defendants COUNTY and LASD, or final policymakers thereof, are so inextricably connected to the unconstitutional conduct that Plaintiffs have endured as to be a substantial moving force behind it. Clearly, Defendants COUNTY's and LASD's unconstitutional customs and practices was the moving force which caused Plaintiff's injuries. Therefore, Defendants COUNTY and LASD must be regarded as similarly liable for all claims raised herein against its employees, agents, and/or representatives under 42 U.S.C. § 1983.

## SEVENTH CLAIM FOR RELIEF

### Negligence

### (By All Plaintiffs as Against as Against All Defendants Save LASD)

91. Plaintiffs reallege and incorporate herein by reference each of the forgoing paragraphs of this Complaint with same force and effect as if fully set forth herein.

92. This cause of action as to the COUNTY is brought pursuant to section 820 and 815.2 of the Government Code. Pursuant to Section 820 of the California Government Code, as public employees, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as a private person. Under Section 815.2 of the Government Code, as public entities, Defendant COUNTY is liable for injuries

caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendant COUNTY, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

93.    At all times, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, owed FRANCISCO NUNEZ a duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

94.    At all times, these Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, owed FRANCISCO NUNEZ the duty to act with reasonable care.

95.    At all times herein mentioned, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, negligently failed to exercise due care and breached their duty by using unreasonable force against FRANCISCO NUNEZ, viciously beating NUNEZ, not summon medical care for NUNEZ's resulting injuries, and allowing NUNEZ to suffer until his death. Instead of not beating NUNEZ, properly taking NUNEZ into custody and booking him into jail, or even seeking necessary medical intervention for the harms Defendant DEPUTIES caused to NUNEZ, Defendant DEPUTIES allowed NUNEZ to die in their custody before abandoning NUNEZ's body to be discovered by passers-by.

96.    These general duties of reasonable care and due care owed to FRANCISCO NUNEZ by Defendants include but are not limited to the following specific obligations:

a. To follow proper protocol for initiating and carrying out a pedestrian stop;

b. To use reasonable force, including only using force when lawfully authorized;

c. To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

///

d. To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person not seen engaged in criminal activity or with an active warrant;

e. To refrain from causing injury to individuals in custody such as Decedent;

f. To properly summon timely medical care to individuals in custody who have been injured or harmed or are experiencing a medical emergency;

g. To timely provide medical care to individuals in custody who are experiencing a medical emergency;

h. To refrain from abusing their authority granted them by law; and

i. To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

97. Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, through their acts and omissions, breached each and every one of the aforementioned duties owed to FRANCISCO NUNEZ.

98. This claim for relief is also brought as a survival claim because FRANCISCO NUNEZ suffered pre-death pain and suffering due to the acts and omissions of Defendants. Therefore, the Estate is seeking pre-death pain and suffering damages pursuant to Cal. Code Civ. Proc. Section 377.34 in addition to wrongful death damages.

99. Defendants LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and COUNTY OF LOS ANGELES are vicariously liable for the violations of state law and conduct of their officers, employees, and agents, including individual named defendants, under California Government Code § 815.2.

100. As a direct and proximate result of these Defendants' negligence, FRANCISCO NUNEZ sustained injuries and damages, and against each and every Defendant named in this claim for relief in their individual capacities are entitled to relief.

31

**COMPLAINT FOR DAMAGES**

## EIGHTH CLAIM FOR RELIEF

### Battery by a Peace Officer

### (By Plaintiff ESTATE OF FRANCISCO NUNEZ, as Against All Defendants Save LASD)

68.     Plaintiffs reallege and incorporate herein by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

69.     The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2 and 820 as well as Cal. Civ. Code § 52.1. Under § 820, as a public employee, the individual defendants, LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, are liable for injuries caused by his acts or omissions to the same extent as a private person. Under § 815.2, the defendant public entities, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and COUNTY OF LOS ANGELES, are vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and scope of that employment, including Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY,  and DOES 1-10. This cause of action is not alleging direct liability against Defendants LOS ANGELES COUNTY SHERIFF'S DEPARTMENT and COUNTY OF LOS ANGELES, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

70.     Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, intentionally made physical contact with Plaintiff FRANCISCO NUNEZ's person by chasing him, contacting him, handcuffing him, and assaulting him sufficient to cause bruises, abrasions, potential burns, and ultimately death.

71.     Furthermore, as previously set forth, the deadly force used by Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, was not necessary to defend human life under California law because FRANCISCO NUNEZ was not a threat of death or serious bodily injury to Defendant DEPUTIES.

///

72.    The actions and omissions of Defendants DEPUTIES LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, were a substantial factor in causing FRANCISCO NUNEZ harm because the deadly force used by Defendants DEPUTIES caused NUNEZ's substantial bodily harm and death.

73.    Therefore, as a direct and proximate result of Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY,  and DOES 1-10's conduct, FRANCISCO NUNEZ suffered injuries causing him severe mental, physical, and emotional distress and anguish from which he would ultimately sustain serious injuries and for which he is entitled to compensation.

74.    Furthermore, as set forth herein, Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, acted with willful and conscious disregard for the rights and wellbeing of FRANCISCO NUNEZ, thereby subjecting him to cruel and unjust hardship. Accordingly, the actions and omissions of Defendant DEPUTIES were malicious and oppressive under the meaning of Cal. Civ. Code § 3294, entitling Plaintiff to recover punitive as well as compensatory damages in order to deter future misconduct by the example of Defendant's punishment.

75.    Accordingly, Plaintiff FRANCISCO NUNEZ is entitled to recover punitive damages and compensatory damages for the severe physical, mental, and emotional anguish NUNEZ experienced in the moments leading up to and including his serious bodily harm due to the negligence of Defendants LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive.

## **NINTH CLAIM FOR RELIEF**

### **Violation of California Civil Code §52.1**

### **(Tom Bane Act)**

### **(By Plaintiff ESTATE OF FRANCISCO NUNEZ, as Against All Defendants Save LASD)**

101.    Plaintiffs reallege and incorporate herein by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth therein.

**COMPLAINT FOR DAMAGES**

102.    This cause of action as to the COUNTY is brought pursuant to section 820 and 815.2 of the Government Code as well as Civil Code Section 52.1. Pursuant to Section 820 of the California Government Code, as public employees, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as a private person. Under Section 815.2 of the Government Code, as a public entity, Defendant COUNTY is liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendant COUNTY, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

103.    By their acts, omissions, customs, and policies, Defendant Deputies LOGAN SIMI, SHANE QUESADA, NOEL WITTY, and DOES 1-10, inclusive, each acting in concert/conspiracy, as described herein, while FRANCISCO NUNEZ was in their custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated NUNEZ's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

 a. To be free from bodily harm pursuant to Cal. Civ. Code § 43;

 b. The right to be free from governmental interference as secured by the Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

 c. The right to be free from unreasonable force as secured by the Fourth Amendments to the United States Constitution, Penal Code Section 835a and the California Constitution;

 d. The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution; and

///

**COMPLAINT FOR DAMAGES**

e. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1.

104. Defendants' violations of FRANCISCO NUNEZ's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act. Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of NUNEZ's rights as described above, Defendants violated NUNEZ's rights by the following conduct constituting threat, intimidation, or coercion:

a. Intentionally using unreasonable force on FRANCISCO NUNEZ;

b. Intentionally placing FRANCISCO NUNEZ in danger of death or serious bodily injury by

c. Intentionally refusing to summon medical care to FRANCISCO NUNEZ;

d. Intentionally refusing to provide medical care to FRANCISCO NUNEZ; and

e. Intentionally placing FRANCISCO NUNEZ in danger of death or serious bodily injury by not tending to his medical emergency resulting from Defendants' unreasonable use of force.

105. Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

106. Further, each Defendant violated FRANCISCO NUNEZ's rights with reckless disregard and with the specific intent and purpose to deprive them of their enjoyment of those rights and of the interests protected by those rights.

107. Defendant LOS ANGELES COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

///

**COMPLAINT FOR DAMAGES**

108.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of FRANCISCO NUNEZ's rights under the Civil Code, United States and California Constitutions, NUNEZ sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to a multiplier of damages including treble damages, costs attorneys' fees, and civil penalties.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as to Defendants as follows:

A.   For compensatory damages including but not limited to physical, mental, and emotional pain and suffering, as well as all past, present, and future related medical expenses, in amounts to be determined according to proof at trial;

B.   For Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.;*

C.   For Wrongful death of FRANCISCO NUNEZ, pursuant to Cal. Code of Civ. Proc. § 377.60 *et. seq.*;

D.   For FRANCISCO NUNEZ coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 *et. seq.*

E.   For Violation of FRANCISCO NUNEZ's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 *et. seq.* and federal civil rights law;

F.   For FRANCISCO NUNEZ's loss of life, pursuant to federal civil rights law;

G.   For Plaintiffs conscious pain, suffering, and disfigurement, pursuant to state law and federal civil rights law;

///

**COMPLAINT FOR DAMAGES**

H.     For General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

I.      For Non-Economic Damages, according to proof plus all further and proper relief;

J.      For Punitive damages as to individual peace officer defendants;

K.     For Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

L.      For Penalties under the Tom Bane Act;

M.    For Interest;

N.     For all other damages allowed under state law;

O.     All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure § 1021.5; California Civil Code §§ 52 *et. seq*., 52.1; and as otherwise may be allowed by California and/or federal law; and

P.      For such further relief as the Court may deem proper and just.

**Dated: March 24, 2025**      **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                               **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorney for Plaintiffs,
ESTATE OF FRANCISCO NUNEZ, et al.

**Dated: March 24, 2025**      **GASTÉLUM LAW, APC**

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs, F.N. & B.N.

37

1   **Dated: March 24, 2025**        **LAW OFFICES OF HUMBERTO GUIZAR, APC**

2

3                                     By: _____
                                      Humberto Guizar, Esq.
4                                     Attorneys for Plaintiffs, A.N.1 & A.N.2

5

6                          **DEMAND FOR JURY TRIAL**

7        Plaintiffs hereby make a demand for a jury trial in this action.

8   **Dated: March 24, 2025**        **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                      **A PROFESSIONAL LAW CORPORATION**
9

10                                    By: _____
                                      Christian Contreras, Esq.
11                                    Attorney for Plaintiffs,
                                      ESTATE OF FRANCISCO NUNEZ, et al.
12

13  **Dated: March 24, 2025**        **GASTÉLUM LAW, APC**

14

15                                    By: _____
                                      Denisse O. Gastélum, Esq.
16                                    Attorneys for Plaintiffs, F.N. & B.N.

17

18

19  **Dated: March 24, 2025**        **LAW OFFICES OF HUMBERTO GUIZAR, APC**

20

21                                    By: _____
                                      Humberto Guizar, Esq.
22                                    Attorneys for Plaintiffs, A.N.1 & A.N.2

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**